United States District Court
Southern District of Texas
**ENTERED**
April 07, 2020
David J. Bradley, Clerk

|   |   |
|---|---|
| *In re* § | |
| Debra Densey Baxter, § | Bankruptcy 14-32988 |
| § | Civil Action H-15-1628 |
| Appellant. § | |
| § | |

## Opinion on Appeal

1. *Background.*

    A debtor filed for bankruptcy under Chapter 13. The Bankruptcy Court dismissed her case – without prejudice – because she did not propose a payment plan in good faith. The debtor appealed.

2. *The Lots.*

    Debra Densey Baxter bought nine lots in Bryan, Texas, at a foreclosure sale in 1999.

    Erasmo Contreras thought that he had superior title to the lots. While their suit for title was pending in state court, Contreras installed water lines and sewage pipes under the land and paid the taxes.

    In 2007, the court held that Baxter owned the lots. She was ordered to pay Contreras $78,068.20 plus interest for the taxes and improvements.

    Baxter filed for Chapter 13 bankruptcy in 2014. The bankruptcy court dismissed her case because she was trying to minimize the value of her assets – a violation of the debtor's good faith requirement for confirmation.

3. *Bankruptcy.*

Bankruptcy under Chapter 13 allows debtors with regular income to keep their property and pay their debts over time. The court must approve the debtor's repayment plan.

For secured debts, a debtor's plan must (a) be approved by the creditor, (b) surrender the collateral securing the claim to the creditor, or (c) pay the creditor at least the full present value of the collateral.[1] The third option is called a cram-down – it can be approved by the court over the objection of a secured creditor.

A strip down is different – it means assigning value to a secured claim by bifurcating it into secured and unsecured components.[2] The claim is split into (a) a secured amount equal to the value of the collateral and (b) an unsecured amount for the rest of the claim.

Contreras had a $78,068.20 judgment lien on Baxter's lots. Baxter's proposed a cram-down plan that bifurcated Contreras's claim into (a) $30,364.56 secured and (b) $48,118.43 unsecured. She proposed to pay the secured portion in full and 21% of the unsecured portion. Contreras objected. The court evaluated her plan in light of Contreras's objection.

The Bankruptcy Court needed to determine the value of the lots to see if the proposed plan fairly compensated Contraras for his interest. Contraras's lien would be secured and paid in full up to the value of the land. The court held two hearings to hear testimony on the value of the lots.

---

[1] 11 U.S.C. §1325(a)(5)(2012).

[2] 11 U.S.C. §506(a)(2012).

A.  *Linda Praytor.*

At the first hearing, Baxter called Linda Praytor – a licensed broker – to testify about the value of the lots.

The bankruptcy court questioned Praytor's valuation method before allowing her to testify.

Important data was missing from her report: (a) she left the distance column empty on the first three comparable sales; (b) she made no adjustments for the size of the properties that she compared to Baxter's; (c) she valued the Baxter's property as if it had no water or sewage, when it had both. Her report says that it cannot be used as an appraisal.

Based on these mistakes, the court found that her opinion on the value of the lots was unreliable.

Baxter argues that the court should accept *any* relevant testimony about the value of the land. It need not. The court's job is to estimate – as closely as possible – the value of the land. It may accept the evidence that it thinks is reliable.

The bankruptcy court properly rejected Praytor's testimony. While Praytor has experience in the real estate market, her opinion was flawed.

Praytor used wide parameters to value comparable properties because few sales had been made in the area. She did not include the distance from Baxter's property on three of the comparable properties. She did not adjust the values for the size of the lots. She valued the lots as if they did not have sewage and water connections when they did.

Praytor's opinion on the value of the lots was unreliable. The bankruptcy court properly denied her testimony.


B.  *Ted Whitmer.*

The bankruptcy court gave Baxter a second chance to give a fair valuation of the land. Baxter offered the appraisal of Ted Whitmer – a licensed appraiser,

attorney, and professor. The court found that Whitmer was qualified to testify about the value of the lot.

The Uniform Standards of Professional Practice gives an appraiser instructions for calculating the fair market value of real estate. The Uniform Standards require an appraiser – among other things – to evaluate the highest and best use of the property when valuing real property.

During voir dire, Whitmer read the instructions that Baxter gave him. The instructions told Whitmer to ignore the highest and best use of the property. Whitmer even said that his opinion on value would not qualify as fair market value because he did not consider the highest and best use of the property.

The bankruptcy court found Baxter's instructions so limiting that he could not give a fair market value of the lots.

The bankruptcy court properly rejected Whitmer's opinion on value. Whitmer's appraisal was too limited by his instruction, resulting in a value substantially less than he would have gotten had he done a standard appraisal. This manipulation of the standard fair market value by Baxter gave the court another artificially depressed value for the lots.

Whitmer's testimony was also properly rejected.

4. *The Value of the Lots.*

Baxter insists that the value of the lots depends *only* on her proposed use of the property. She says that the bankruptcy court erred by requiring a value that reflects the highest and best use of the lots. In her mind, her exact, current use is all that matters for value.

Baxter owns nine lots. Baxter, her children, her ex-husband, and her friend live on some of the lots and the rest are vacant. Everyone living on the lots pays her some rent. She would like the land to be valued accordingly.

In a cram-down case – where the debtor elects to keep the collateral instead of surrendering it to the creditor – the property must be valued at the

price a willing buyer would pay to obtain like property from a willing seller.[3] It is not the liquidated value of the property, as Baxter argues; it is the fair market value. The fair market value incorporates the highest and best use standard that Whitmer would have used in his appraisal. That does not mean the property will be valued at its optimum use, but that the use will be reflected in the overall market value.

Baxter gave no evidence of the fair market value of the lots. The opinions she gave – from Praytor and Whitmer – carved away value from the lots, artificially reducing their value.

A debtor cannot minimize her estate by using it in a way that is not economic, forcing her creditors to take lower distributions. This is not the first time Baxter has done this. She filed for bankruptcy four times since 2006; in this case, she was given two chances to give reliable evidence on value over a period of thirteen months. She never did.

The bankruptcy court found that Baxter did not propose her repayment plan in good faith.[4] She attempted – twice – to minimize the value of her estate. It denied confirmation and dismissed her case.

The court's job was to determine the fair market and rental value of the property. Without it, the court could not determine if Baxter's plan fairly repaid Contreras.[5] Not having received competent evidence, it could not confirm the reorganization plan.

The bankruptcy court's decision is sound. A debtor is not afforded endless opportunity to present valuation evidence. Baxter had ample time and opportunity to propose a plan in good faith.

Bankruptcy under Chapter 13 allows debtors to keep their property in the face of creditors attempting to repossess it; in return, the debtor has an obligation

---

[3] Associates Commercial Corp. v. Rash, 520 U.S. 953 (1997).

[4] 11 U.S.C. §1325(a)(3) (2012).

[5] 11 U.S.C. §1325(a)(5) (2012).

to propose a plan in good faith. The plan must fairly compensate the creditors. Baxter repeatedly depressing the value of her land to pay Contreras less is an attempt to exploit this rule.

5. Conclusion.

Debra Baxter did not present reliable evidence about the value of her property – information that was essential to confirm her plan. Instead, she gave two opinions that – at her direction – depressed the value of the land so that she could pay Contreras less. Soliciting testimony that artificially reduces the value of land is a violation of the debtor's duty to act in good faith.

The Bankruptcy Court's decision to dismiss this case without prejudice is affirmed.

Signed on April 7, 2020, at Houston, Texas.

_____
Lynn N. Hughes   USDJ
United States District Judge